Leeb v. Nationwide Credit Corporation is our next case. Mr. Schwaffer. Good morning, Your Honors. I represent Nationwide. As you no doubt know. This appeal involves two issues, the first being whether consumers' interpretation of a letter from a debt collector is relevant to a determination of whether there's a violation of Section 1692G of the Fair Debt Collection Practices Act. And the second issue is if there is a violation, whether the bona fide air defense can be applied in this case. With regard to the first issue, briefly, Section 1692G requires that when a debt collector requires a debt collector to cease debt collection activities where the debtor has disputed a debt in writing within 30 days of receiving the initial debt collection letter, which Mr. Leeb did in this case. Here Mr. Leeb disputed a number of letters. Bang, bang, bang. One after the other. And Nationwide in an attempt to respond to these letters, incorrectly sent out a letter which the District Court interpreted as a letter from a debt collector attempting to collect a debt. And I understand exactly where you're coming from, Your Honor. But our position is that can you ignore all the surrounding facts and circumstances, which is what the District Court did. And I just think that was an error. And I don't think you can do that under this court's precedent. I think you always have to look into how did the debtor perceive this letter. Materiality, for instance, is always an issue. Well, he knew the debt wasn't owed, is that right? He knew the debt wasn't owed. And when he was getting these letters, he knew it. That's what you're trying to say. Right. The problem is here, though, isn't that the I guess the bank witness testifies that she intended to send that letter. It wasn't say I made a big mistake or I sent the wrong letter. And that's where technically this makes it a tough case for you. Well, that really gets over into the bona fide air defense, but I guess she would be happy to do. I know you're trying to say look at the big picture. Everybody knew better. She intended to send a letter because to respond to Mr. Lieb's request to acknowledge his dispute. She did not intend to violate the act. This court's decision in court quite clearly says the mere fact that she intended to do something does not make the bona fide air defense unavailable. She has to intend to violate the to make the bona fide air defense unavailable. The bona fide air defense is available according to the statute when the error occurs, quote, notwithstanding the maintenance procedures reasonably adapted to avoid any such error. So what are the procedures that Nationwide has adapted that are reasonable to Nationwide had a policy of not sending. The reason I ask this question is because your brief says many times Nationwide has a policy not to send such letters. The statute doesn't talk about policies. The statute talks about procedures. So my question is what procedures has Nationwide adopted? Well, they have, notwithstanding the fact that Ms. McElroy made this mistake, they had two people to implement these policies and they only made this mistake once in four years. Look, I completely understand those contentions, but my question is statutory. What procedures did Nationwide use? Your brief doesn't spell them out. Well, the procedure was to have a person to review these things. Yeah, that doesn't sound like a procedure. That sounds like your policy. A procedure would be something like we have programmed our computer so that somebody who has disputed the debt could never receive a letter like this, but there was a bug in the software. Well, the procedure was she was supposed to review it, but she didn't. She bullied her. That is a procedure. That goes beyond a policy. And she made a mistake. Isn't that a rhetorical question? Forgive me. Look, your problem, you may try to recharacterize your policy as a procedure, but as I read your brief, your brief doesn't even contend that Nationwide had a procedure. You altogether ignore the statutory language and instead say we have this policy and we don't make this mistake very often and therefore we're entitled to this defense. But that's just not what the statute says. The statute says you have to have a procedure. Now maybe having particular people do particular things is a procedure, but your brief doesn't even make that argument. I don't know that this case is all that dissimilar from some of the cases we cite, such as Lewis, but I understand what you're saying. To program the computer, that would make the system foolproof. Perhaps we should have done that, but then there would be no error at all. There would be no occasion to even have this defense. Oh no, alas, software is sometimes bad and people make bad inputs into software. Facts of life. Even in your policy or whatever, she sent the wrong letters. She didn't understand at the outset that it was the wrong letter, apparently, so she intentionally sent it. She shouldn't send any letter at all. There was no reason to send any letter at all. She wasn't trained or she didn't read it or something. She picked out that letter and sends it. The letter was totally inappropriate for this. And the other side knew it was wrong and jumped right on it. See, that's the essence of the first argument. They knew it was wrong right off and they knew that we weren't attempting to collect the debt right off. But the consumer's state of mind doesn't matter to 1692G. And there's a case law to that effect, a Seventh Circuit case. It says the consumer's state of mind is not relevant to whether a particular communication attempts to collect the debt. So you can't hang your hat on that. I'm sorry. I'm having a hard time hearing you, Judge Williams. Oh, I'm sorry. The Ruth case says that the consumer's state of mind doesn't matter under 1692. And so you can't hang your hat on that, that, you know, the consumer knew that he had already complained about the debt and knew that the letter that was sent back to him really didn't mean anything. You can't use that. The Ruth case, Ruth versus Triumph Partnerships, a Seventh Circuit case from 2009. There are an awful lot of cases that say, from the circuit, say that if it's non-material, if he wasn't fooled, if he doesn't know, the purpose of the act is to prevent harm to the consumer. And if he wasn't harmed, if it was immaterial to him, then no harm, no foul, to put it in very colloquial type terms. If he did not receive it as a collection letter, then I still think the district court erred by just ignoring the facts of the case. I'd like to say whatever 15 seconds or 30 seconds I have left for rebuttal, if I may. Certainly, counsel. Mr. Shostrak. Good morning. May it please the courts. This case is about an important consumer right, and that is the right of a consumer who has a legitimate dispute to make a debt collector stop demanding payment until it first provides verification that the debt is legitimate. In this case, Mr. Lieb had a legitimate dispute, but he didn't know that Nationwide was not going to collect the debt. In fact, the last communication that Mr. Lieb received from Nationwide before the letter it issued in this case threatened to put the debt on his credit report if he didn't pay. So the question of materiality here, I think, number one, it's irrelevant because the only time that this court has ever had materiality held that materiality is an element of a claim is when the claim is based on a false or misleading representation. There is no such false or misleading representation of a claim as an element. A demand for payment is highly material because it could influence a consumer's decision about whether or not to pay a debt. Even a consumer like Mr. Lieb, who has a legitimate dispute, could still be influenced to pay a debt upon receiving demands for payment because they might conclude, look, the easiest way to take care of this situation is just to pay. Even though I don't owe it, I'm going to pay because I'm tired of these loans. And Mr. Lieb was clearly concerned about this because he sent two dispute letters after he received a threat to credit report the debt. So I'd like to move on to the bona fide error defense. Well, I'd like to say one more thing about this letter being a violation of the Act. In its summary judgment briefing, Nationwide conceded that it had a policy against sending the letter because it asked for payment. That concedes that this letter is an attempt to collect a debt. And so I think that that issue is clearly resolved in Mr. Lieb's favor. Moving on to the bona fide error defense, Nationwide has failed every single element of the defense. And this court therefore has three independent grounds to affirm the district court's judgment. The first element is not satisfied because Nationwide has not shown that the violation was not intentional. The violation in this case was the sending of the January 5th letter. And the affidavit from the employee admits that she deliberately chose this particular letter because she thought it was the appropriate response to the plaintiff's That makes it, at least the way I look at it, it's a very narrow case. A lot of times we get these cases and somebody's trying to magnify it into sort of a class action or something. This one seems to be pretty confining because somebody just did a dumb thing. She intended to send a letter that was the wrong letter. And they said that's only happened maybe once before or something. Otherwise they have all these, debating between procedure and policy, they have these other policy decisions. And this was one that they just made a big mistake. So that's the way I look at it at least. This is a very narrow case and they're stuck kind of. It's because they intended to send this letter. The wrong one. Yeah, that's right. They intended to send this letter. The statistic that they quoted about having only done this a couple times I think is actually a little bit misleading. The statistic doesn't say how many times they've sent a letter asking for payment of a debt on a disputed account. It says how many times that they sent this particular letter within an arbitrary time frame that doesn't actually have anything to do with the act. They set off a 30 day period for some reason in that statistic. So I don't think it actually helps them to show that they have reasonable procedures in place to prevent this violation. The second element is not satisfied either. And that's because they haven't identified any specific error that led to the delivery or the sending of the letter. And as the Supreme Court held in German, that's what it requires. It requires a clerical type error that actually led to the violation. And in this case they haven't pointed out any such error. They just say we shouldn't have sent the letter because it's a violation of our policy. That's not relying on any error that led to the violation. And then finally, as the court noted, they haven't explained any specific procedures that relate to the conducted issue here. Saying they have a policy is not enough. They did mention that they train and supervise their employees to comply with the Fair Debt Collection Practices Act generally, but that doesn't say anything about how they can prevent this violation that occurred in this case, which is the sending of the letter. So unless the court has any further questions, I'll rest there. Thank you. Members of the Council, anything further? Mr. Swafford? Other than the point of the fact that there are things in the record that this particular woman who made the mistake did address this letter, which is a procedure, although I know it is not in-depth, and to point out the fact that this 30-day period and this one mistake, it's not really a fair criticism because we picked that 30-day period because that's the class he picked. We can pick any period he wants. I'd still ask the court to consider our briefs and our position of care, but thank you, Your Honor. Thank you very much. The case is taken under